UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

TERRY BLIGEN,                            :

                    Petitioner,          :    06 Civ. 1375 (CM)(HBP)

         -against-                       :    REPORT AND
                                              RECOMMENDATION
JOHN BURGE, Superintendent,              :
Elmira Correctional Facility
                                         :
                    Respondents.
                                         :
----------------------------------X

          PITMAN, United States Magistrate Judge:


          TO THE HONORABLE JUDGE COLLEEN MCMAHON, United States

District Judge,


I.   Introduction


          Petitioner Terry Bligen seeks, by his petition for a

writ of habeas corpus pursuant to 28 U.S.C. § 2254, an order

vacating a judgment of conviction entered on May 18, 2003 by the

New York State Supreme Court, New York County (McLaughlin, J.),

for one count of murder in the second degree in violation of New

York Penal Law Section 125.25.  Petitioner was sentenced on April

17, 2003 to an indeterminate term of twenty-five years to life

and is currently incarcerated pursuant to the judgment.  Peti-

tioner seeks habeas relief on the ground that his trial counsel

was ineffective because he failed to object to the Trial Court's

"unconstitutional jury charge" (Petitioner's Memorandum of Law, dated March 22, 2006 ("Pet. Mem."), at 2, 12).

For the reasons set forth below, I respectfully recommend that the petition be denied.

## II. Facts

### A. Background

The evidence against petitioner is discussed in greater detail at pages 23-25, below in connection with the analysis of his ineffective-assistance claim. For present purposes, it is sufficient to note that petitioner's conviction arises out of a stabbing that occurred in upper Manhattan on August 25, 2001. On that date, Lynn Buksha was sitting on a bench with Gilbert Powell, watching a baseball game at 121st Street and Second Avenue (Trial Transcript, Volume 2 of 2, ("Tr.") at 315, 338). Petitioner, Terry Bligen, approached Buksha and attempted to engage her in conversation but was rebuffed.[1] (Tr. 146-48, 316-17, 340, 342). Petitioner expressed anger at Buksha and rejected Powell's attempt to intervene (Tr. 317, 343). Petitioner returned approximately fifteen to twenty minutes later and asked to speak with Powell (Tr. 320-21, 351). Powell agreed and started

---

[1]Ms. Buksha testified that she had known petitioner for a long time and several years earlier he had stolen between sixty and eighty dollars from her home (Tr. 330-32).

to walk with petitioner (Tr. 43, 44, 351). Petitioner placed his
arm around Powell's shoulders in a hugging motion and muttered
either "do you know who the F* I am" or "you know me, you know
me, what the F*" and then stabbed Powell in the stomach (Tr. 43,
44, 64, 65, 89, 353, 354). The knife pierced Powell's aorta, and
he bled to death within two to three minutes (Tr. 116-120).
After stabbing Powell, petitioner stood over his body, held up
the knife, "looked [Buksha] dead in the face, [and] smirked" (Tr.
322, 355). Petitioner then shook the blood off the knife, calmly
wrapped it in a white towel or a white plastic bag and walked
away from the crime scene as if nothing had happened (Tr. 45,
149, 150, 171-172, 306, 322, 356). Later that day, petitioner
admitted to a friend that he "did something wrong" (Tr. 32).

B.  The Jury Charge

The trial judge first instructed the jury on the
state's burden of proving every element of the charge beyond a
reasonable doubt and clarified the legal definition of reasonable
doubt. The trial judge then explained the element of intent:

> Intent means conscious, aim, or objective, your pur-
> pose. The law says that intent in this case, the
> theoretical, the claimed intent caused the death. That
> has to be present at or before the doing of the act.
>
> The law does not any longer have the concept of premed-
> itation. It does not matter that the People have to
> establish the intent to cause Mr. Powell's death ex-
> isted for any specific period before Mr. Powell was hit
> with the knife, struck with the knife. That intent

could have been formed in a nanosecond or it could have
been formed any other time.  There is no time reference
with respect to the word intent as there was back in
the 1940s crime movies premeditated.

You should understand that even though there is no
requirement of time, the People must prove beyond a
reasonable doubt that the doing of an act was for the
purpose of the intent to cause the death of Mr. Powell.

(Tr. 442-43).

After describing the important role of the jury in

determining intent, the Trial Court offered the following two

principles as guidance for the jury:

So the People in this case are suggesting that two
principles are useful to you.  If you find that either
or both of them are not useful based on what your
assessment is of the fact, reject them and see whether
or not the People have proven, met their obligation in
proving the elements beyond a reasonable doubt apart
from these two principles.

The two principles are that in gleaning attempting to
glean somebody's intent you can look to what a person
did before, during, and after an event.  On the issue
of what they intended during an event if that assists
you, that's fine.  You are not required to use it.  If
you don't think its helpful here reject it.

Another component of the intent law is that a person
intends the natural and logical consequences of what
they do.  If that helps use it, if it doesn't help in
this context of this case whatever fact that you are
finding, disregard it and look elsewhere in the case to
see if there is something else that will assist you.

(Tr. 444-45).  No objection was made to the foregoing charge.

C.  Procedural History

        Petitioner, assisted by counsel, appealed his convic-
tion to the Appellate Division of the Supreme Court, First
Department.  Petitioner raised three arguments:  (1) the evidence
of intentional murder was legally insufficient and the verdict
was against the weight of the evidence, (2) the judge committed a
Sandstrom[2] error in his instructions to the jury on intent, and
(3) the petitioner received ineffective assistance of counsel as
a result of counsel's failure to object to the allegedly uncon-
stitutional jury charge (Respondent's Memorandum of Law in
Support of Answer Opposing Petition for a Writ of Habeas Corpus,
dated July 18, 2006 ("Resp. Mem."), at 2-3).  On March 15, 2005,
the Appellate Division of the Supreme Court, First Department,
affirmed petitioner's conviction.  People v. Bligen, 16 A.D.3d
214, 790 N.Y.S.2d 870 (1st Dep't 2005).

        On May 10, 2005, petitioner filed a motion to reargue
the appeal before the Appellate Division; that motion was denied
(Pet. Mem. at 1; Resp. Mem. at 2).  Petitioner sought leave to
appeal to the New York Court of Appeals asserting the same three
claims he argued before the Appellate Division; the New York
Court of Appeals denied his application for leave to appeal on

_____

        [2]Sandstrom v. Montana, 442 U.S. 510 (1979).

5

June 14, 2005.  <u>People v. Bligen</u>, 5 N.Y.3d 759, 834 N.E.2d 1263, 801 N.Y.S.2d 253 (2005); Resp. Mem. at 3; Pet. Mem. at 1.

Petitioner filed his habeas corpus petition on February 21, 2006 (Pet. Mem at 2).

## III.  <u>Analysis</u>

Petitioner asserts only one claim -- that his trial counsel was ineffective by failing to object to object to the Trial Court's charge that: "a person intends the natural and logical consequences of what they do." (Tr. 445).  Petitioner argues that this portion of the charge created a mandatory presumption that unconstitutionally relieved the state of its burden of proving intent in violation of <u>Sandstrom v. Montana</u>, <u>supra</u>, 442 U.S. 510 (Pet. Mem. at 12, 16, 17).  Petitioner further contends that because this instruction "was clearly unconstitutional under the well established principle of <u>Sandstrom</u> . . . it fell below reasonable standard of competence for trial counsel to fail to object to it" (Pet. Mem. at 13).

### A.  <u>Standard of Review</u>

A habeas petitioner must meet a stringent standard before a federal court can issue the writ.  Specifically, habeas relief may be granted only when the state court's decision:

> (1) resulted in a decision that was contrary to, or
> involved an unreasonable application of, clearly estab-

lished Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court has explained the alternative standards set of in the former paragraph as follows:

First, we have explained that a decision by a state court is "contrary to" our clearly established law if it "applies a rule that contradicts the governing law set forth in our cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." Williams v. Taylor, 529 U.S. 362, 405-406 (2000). See also Early v. Packer, 537 U.S. 3, 7-8, (2002) (per curiam). . . .

Second, [petitioner] can satisfy § 2254(d) if he can demonstrate that the [State] Court's decision involved an "unreasonable application" of clearly established law. As we have explained:

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly. See Bell v. Cone, 535 U.S. 685, 698-699 (2002); Williams, supra, at 411. Rather, it is the habeas applicant's burden to show that the state court applied [that case] to the facts of his case in an objectively unreasonable manner." Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002) (per curiam).

Price v. Vincent, 538 U.S. 634, 640-41 (2003); accord Brown v. Payton, 544 U.S. 133, 141 (2005); see also Lockyer v. Andrade, 538 U.S. 63, 70-73, 75 (2003); Hawkins v. Costello, 460 F.3d 238, 242-43 (2d Cir. 2006); Brown v. Artuz, 283 F.3d 492, 500-02 (2d Cir. 2002).

7

In addition to the definition of "unreasonable applica-
tion" set forth above, a state court may unreasonably apply
Supreme Court precedent "if the state court unreasonably extends
a legal rule established by the Supreme Court or if it unreason-
ably fails to extend a legal rule to a context in which the rule
reasonably should apply." Serrano v. Fischer, 412 F.3d 292, 296-
97 (2d Cir. 2005). "Unreasonableness is determined by an 'objec-
tive' standard." Gersten v. Senkowski, 426 F.3d 588, 607 (2d
Cir. 2005), quoting Williams v. Taylor, 529 U.S. 362, 409 (2000).
In order for a state court's application of Supreme Court prece-
dent to be unreasonable, "[s]ome increment of incorrectness
beyond error" is required. Henry v. Poole, 409 F.3d 48, 68 (2d
Cir. 2005)(internal quotation marks omitted); accord Brown v.
Artuz, supra, 283 F.3d at 501; Aparicio v. Artuz, 269 F.3d 78,
94 (2d Cir. 2001). However, "the increment need not be great;
otherwise, habeas relief would be limited to state court deci-
sions 'so far off the mark as to suggest judicial incompetence.'"
Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000), quoting
Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 889 (3d Cir.
1999)(en banc); accord Gersten v. Senkowski, supra, 426 F.3d at
607.

The nature of the rule in issue also impacts the
assessment of the reasonableness of the state court's action.

> [W]hile very specific rules may not permit much leeway
> in their interpretation, the same is not true of more

8

> general rules, the meaning of which "must emerge in
> application over the course of time." [Yarborough v.
> Alvarado, 541 U.S. 652, 664 (2004)].  "The more general
> the rule, the more leeway courts have in reaching
> outcomes in case by case determinations."  Id.

Serrano v. Fischer, supra, 412 F.3d at 297; see also Hawkins v.

Costello, supra, 460 F.3d at 243.

Both the "contrary to" and "unreasonable application"

clauses "restrict[] the source of clearly established law to [the

Supreme] Court's jurisprudence."  Williams v. Taylor, supra, 529

U.S. at 412.  "That federal law, as defined by the Supreme Court,

may either be a generalized standard enunciated in the [Supreme]

Court's case law or a bright-line rule designed to effectuate

such a standard in a particular context."  Kennaugh v. Miller,

289 F.3d 36, 42 (2d Cir. 2002).  "A petitioner can not win habeas

relief solely by demonstrating that the state court unreasonably

applied Second Circuit precedent."  Yung v. Walker, 341 F.3d 104,

110 (2d Cir. 2003); accord DelValle v. Armstrong, 306 F.3d 1197,

1200 (2d Cir. 2002); Mask v. McGinnis, 252 F.3d 85, 90 (2d Cir.

2001).

To be entitled to the deferential standard of review

under subsection 2254(d), the state courts must have resolved the

petitioner's claims "on the merits."  Cotto v. Herbert, 331 F.3d

217, 230 (2d Cir. 2003); see also Ryan v. Miller, 303 F.3d 231,

245 (2d Cir. 2002)("[I]n order for this deferential standard of

§ 2254 to apply, we must first determine that the state court

considered [petitioner's claim] on its merits."); <u>Sellan v.
Kuhlman</u>, 261 F.3d 303, 309-11 (2d Cir. 2001).

The Second Circuit has instructed habeas courts to
"classify" a state court decision as either: (1) "fairly appear-
ing to rest primarily on federal law or to be interwoven with
federal law"; or (2) "fairly appearing to rest primarily on state
procedural law." <u>Jimenez v. Walker</u>, 458 F.3d 130, 145 (2d Cir.
2006). "If the state court's decision falls into the first
category, and does not 'contain a clear statement of reliance on
a state procedural bar,' the decision must be treated as having
been made on the merits." <u>Mateo v. Fishkill Corr. Facility</u>, CV-
04-3420 (DGT), 2007 WL 2362205 at *5 (E.D.N.Y. Aug. 14, 2007),
<u>quoting</u> <u>Jimenez v. Walker</u>, <u>supra</u>, 458 F.3d at 138. To make this
classification, habeas courts in this circuit examine "(1) the
face of the state-court opinion, (2) whether the state court was
aware of a procedural bar, and (3) the practice of state courts
in similar circumstances." <u>Jimenez v. Walker</u>, <u>supra</u>, 458 F.3d at
145 n.16.

Here, the first factor, by itself, undeniably estab-
lishes that the Appellate Division adjudicated the merits of
petitioner's ineffective-assistance claim. The Appellate Divi-
sion rejected petitioner's ineffective-assistance claim with the
following language: "The record establishes that defendant
received effective assistance of counsel (<u>see</u> <u>People v Benevento</u>,

10

91 NY2d 708, 713-714 [1998]; <u>People v Hobot</u>, 84 NY2d 1021, 1024
[1995]; <u>see</u> <u>also</u> <u>Strickland v Washington</u>, 466 US 668 [1984])."
<u>People v. Bligen</u>, <u>supra</u>, 16 A.D.3d at 215, 790 N.Y.S.2d at 870.

      Although brief, I conclude that the Appellate Divi-
sion's ruling constitutes an adjudication of the merits of
petitioner's ineffective-assistance claim.  First, the language
used by the Appellate Division clearly relates to the merits of
the ineffective-assistance claim and does not suggest reliance on
a procedural bar as a basis for its decision.  Second, the
Appellate Division relied on <u>Strickland v. Washington</u>, 466 U.S.
668 (1984), which established the substantive standard applicable
to ineffective-assistance claims.  In light of the language used
and precedent cited, I conclude that the Appellate Division
resolved petitioner's ineffective-assistance of counsel claim on
the merits.  The decision of the Appellate Division is, there-
fore, entitled to the deferential standard of review set forth in
Section 2254(d).

    B.  Ineffective Assistance
       <u>of Trial Counsel</u>

      In order to prevail on an ineffective-assistance claim,
a habeas petitioner must meet the now-familiar, two-part test set
forth in <u>Strickland v. Washington</u>, 466 U.S. 668, 686-87 (1984).

         The benchmark for judging any claim of ineffectiveness
         must be whether counsel's conduct so undermined the
         proper functioning of the judicial process that the

trial cannot be relied on as having produced a just
result.

                    *     *     *

A convicted defendant's claim that counsel's
assistance was so defective as to require reversal of a
conviction . . . has two components. First, the defen-
dant must show that counsel's performance was defi-
cient. This requires showing that counsel was not
functioning as "counsel" guaranteed by the Sixth Amend-
ment. Second, the defendant must show that the defi-
cient performance prejudiced the defense. This re-
quires showing that counsel's errors were so serious as
to deprive the defendant of a fair trial, a trial whose
result is reliable. Unless a defendant makes both
showings, it cannot be said that the conviction . . .
resulted from a breakdown in the adversary process that
renders the result unreliable.

Accord United States v. Abad, 514 F.3d 271, 275 (2d Cir. 2008);

Campusano v. United States, 442 F.3d 770, 773 (2d Cir. 2006);

Davis v. Greiner, 428 F.3d 81, 87 (2d Cir. 2005); Greiner v.

Wells, 417 F.3d 305, 319 (2d Cir. 2005), cert. denied, 546 U.S.

1184 (2006); Aeid v. Bennett, 296 F.3d 58, 62 (2d Cir. 2002);

Hernandez v. United States, 202 F.3d 486, 488 (2d Cir. 2000);

Guerrero v. United States, 186 F.3d 275, 281-82 (2d Cir. 1999);

McKee v. United States, 167 F.3d 103, 106-07 (2d Cir. 1999).

In determining whether counsel's performance was

objectively deficient, courts "must indulge a strong presumption

that counsel's conduct falls within the wide range of reasonable

professional assistance; that is, the [petitioner] must overcome

the presumption that, under the circumstances, the challenged

action might be considered sound trial strategy." Strickland v.

Washington, supra, 466 U.S. at 689 (internal quotation marks omitted).  "'Rather than grade counsel's performance', [a court should] limit itself to determining 'whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process.'"  Erdheim v. Greiner, 22 F. Supp.2d 291, 293 (S.D.N.Y. 1998), quoting Strickland v. Washington, supra, 466 U.S. at 696; United States v. Aguirre, 912 F.2d 555, 561 (2d Cir. 1990).  The Second Circuit has instructed that trial "counsel's failure to object to a jury instruction constitutes unreasonably deficient performance only when the trial court's instruction contained 'clear and previously identified errors.'"  Aparicio v. Artuz, supra, 269 F.3d at 99, quoting Bloomer v. United States, 162 F.3d 187, 193 (2d Cir. 1998).

The second prong of the test -- actual prejudice -- requires that the petitioner show that, but for counsel's errors, there is a "reasonable probability" that the result of the trial would have been different.  Strickland v. Washington, supra, 466 U.S. at 694.   "A reasonable probability is a probability sufficient to under mine confidence in the outcome." Strickland v. Washington, supra, 466 U.S. at 694.  In evaluating the prejudice suffered by a petitioner as a result of counsel's deficient performance, the court looks to the "cumulative weight of error" in order to determine whether the prejudice "reache[s] the

constitutional threshold." <u>Lindstadt v. Keane</u>, 239 F.3d 191, 202 (2d Cir. 2001). The court must also bear in mind that "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." <u>Strickland v. Washington</u>, <u>supra</u>, 466 U.S. at 696. Ordinarily, prejudice must be affirmatively proven; it will be presumed only in a limited number of exceptional circumstances, none of which are relevant here.[3] <u>Strickland v. Washington</u>, <u>supra</u>, 466 U.S. at 692-93.

Where, as here, the claim of ineffective assistance is based on counsel's failure to object to a defective jury charge, the second part of the <u>Strickland</u> test requires a showing that the outcome of petitioner's trial would likely have been different had an appropriate objection been made. <u>See</u> <u>Cox v. Donnelly</u>, 387 F.3d 193, 198 (2d Cir. 2004); <u>Larrea v. Bennett</u>, 368 F.3d 179, 183 (2d Cir. 2004). Alternatively, petitioner can establish prejudice by demonstrating that had a timely objection been made and the Trial Court had not taken corrective action, there is a reasonable likelihood that a state appellate court would have found the instruction to contain non-harmless error. <u>Bloomer v.</u>

---

[3]Prejudice will be presumed where a petitioner is subject to "[a]ctual or constructive denial of the assistance of counsel," or where the state has directly interfered with counsel's representation, or where "counsel is burdened by an actual conflict of interest." <u>Strickland v. Washington</u>, <u>supra</u>, 466 U.S. at 692-93.

United States, supra, 162 F.3d at 193; Bouyea v. United States, 263 F. Supp.2d 403, 411 (D. Conn. 2003).

Finally, since the test is conjunctive, a habeas petitioner's failure to satisfy either prong requires that the challenge to the conviction be rejected. Strickland v. Washington, supra, 466 U.S. at 697.

C.  Petitioner's Claim

Petitioner's sole specification of ineffective assistance of counsel is that his trial counsel failed to object to the Trial Court's charge "a person intends the natural and logical consequences of what they do" (Tr. 445).

Because it is important to consider the challenged portion in context,[4] I note that at the outset of his charge, the Trial Court gave the jury the standard admonition that it was obligated to follow the law as stated by the Court.[5]  In addi

_____

[4]See Cupp v. Naughten, 414 U.S. 141, 146-47 (1973) ("In determining the effect of [an] instruction on the validity of [a petitioner's] conviction," it is a "well-established proposition that a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge."); accord Justice v. Hoke, 45 F.3d 33, 34 (2d Cir. 1995).

[5]Specifically, the Trial Court charged the jury:

On the other hand, you have no choice, you must follow whatever the law turns out to be whether you understand why it's the law or not, doesn't matter. You must follow it and don't worry about not

(continued...)

tion, prior to giving the jury the challenged passage, the Trial
Court stated the three elements of the charge of murder in the
second degree, to wit, (1) an act, (2) that causes the death of
another and (3) performed with the intent of causing the death of
another (Tr. 442). The Trial Court then spent approximately
three pages explaining the element of intent. He defined intent
as an actor's "conscious, aim, or objective, [his] purpose" (Tr.
442) and explained that although intent does not require premedi-
tation, the jury could find petitioner guilty of murder in the
second degree only if it found that the prosecution had proved
beyond a reasonable doubt that petitioner acted with the intent
to kill Powell (Tr. 443). The Trial Court further noted that a
person could have multiple intents simultaneously (Tr. 443-44).
Immediately before giving the challenged passage, the Trial Court
gave the following instructions:

> Intent is a secret operation of somebody's mind
> and a fact finder even a juror were they present when-
> ever something happens, be it this case or some other
> factual situation, never gets a print out of what's
> going on in a person's head and so [far the] system
> [has] relied on juries deciding that if the intent
> component and any other component, I'm now specifically
> talking about mental component, was proven beyond
> reasonable doubt.

---

[5](...continued)
> understanding what the law means, that will be easy and
> I'll explain it to you now.

(Tr. 432).

So the People in this case are suggesting that two principles are useful to you.  If you find that either or both of them are not useful based on what your assessment is of the fact, reject them and see whether or not the People have proven, met their obligation in proving the elements beyond a reasonable doubt apart from these two principles.

The two principles are that in gleaning[,] attempting to glean somebody's intent you can look to what a person did before, during, and after an event. On the issue of what they intend during an event if that assists you, that's fine.  You are not required to use it.  If you don't think it's helpful here reject it.

Another component of the intent law is that a person intends the natural and logical consequences of what they do.  If that helps use it, if it doesn't help in this context of this case whatever fact that you are finding, disregard it and look elsewhere in the case to see if there is something else that will assist you.

(Tr. 444-45).

    In Sandstrom v. Montana, supra, 442 U.S. 510, the Supreme Court held that, in a criminal trial, the instruction "the law presumes that a person intends the ordinary consequences of his voluntary acts" impermissibly created a mandatory presumption of intent upon proof by the state of the other elements of the crime and improperly relieved the prosecution of its burden of proving intent.  Cox v. Donnelly, supra, 387 F.3d at 198. Although it is clear that such a mandatory instruction is prohibited, an instruction that merely permits, but does not require, the jury to infer that an actor intends the ordinary consequences of his conduct does not run afoul of Sandstrom.  See Francis v. Franklin, 471 U.S. 307, 314 (1985) ("A permissive inference does

not relieve the State of its burden of persuasion because it still requires the State to convince the jury that the suggested conclusion should be inferred based on the predicate facts proved.  Such inferences do not necessarily implicate the concerns of Sandstrom."); accord Payne v. LeFevre, 825 F.2d 702, 707 (2d Cir. 1987); Erdheim v. Greiner, 22 F. Supp.2d 291, 297-98 (S.D.N.Y. 1998).

There can be little question that the challenged language here violated Sandstrom.  In Cox v. Donnelly, supra, 387 F.3d at 196, a habeas petitioner sought relief based on his counsel's failure to object to the charge "'a person intends the natural consequences of his acts.'"  Although the Court of Appeals for the Second Circuit remanded the matter for further fact finding concerning the possible existence of a strategic reason for defense counsel's failure to object, it stated that "[t]here can be no doubt that the trial court's instruction on intent contravened the longstanding holding of Sandstrom."  487 F.3d at 198.  Since the language used by the Trial Court in this case is not materially different, Cox compels the conclusion that the charge in this matter was also deficient.  See also Calderon v. Keane, 97 Civ. 2116 (RCC)(JCF), 2002 WL 1205745 at *9 (S.D.N.Y. Feb. 21, 2002) (Finding that instructions to the jury that "'the law says that a person is presumed to intend the natural and probable consequences of his act'" and "'the law says

18

that a person is presumed to intend that which he actually does'" "clearly run[] afoul of the Supreme Court's holding in <u>Sandstrom</u> . . . .") (Report & Recommendation).

The record does not suggest any strategic reason that would have justified petitioner's counsel's failure to object to the intent charge, and I shall assume, without deciding, that counsel's failure to object satisfies the first prong of <u>Strickland</u>. Nevertheless, I conclude that the petition should be denied because petitioner has not demonstrated that he suffered any prejudice as a result of his counsel's failure to object.

In determining whether petitioner suffered prejudice, the entire record must be considered. <u>Gersten v. Senkowski</u>, 426 F.3d 588, 611 (2d Cir. 2005), <u>citing</u> <u>Strickland v. Washington</u>, <u>supra</u>, 466 U.S. at 696; <u>accord</u> <u>Anaya v. Brown</u>, 05 Civ. 8974 (DLC), 2006 WL 2524079 at *12 (S.D.N.Y. Sept. 1, 2006). I understand this to mean that both the severity of counsel's error and the weight of the evidence against petitioner must be considered. <u>See</u> <u>Yates v. Evatt</u>, 500 U.S. 391, 405 (1991) <u>overruled</u> <u>in</u> <u>part</u> <u>on</u> <u>other</u> <u>grounds</u> <u>by</u> <u>Estelle v. McGuire</u>, 502 U.S. 62, 73 n. 4 (1991) (<u>Sandstrom</u> error may be harmless where "the force of the evidence . . . is so overwhelming as to leave it beyond reasonable doubt that the verdict resting on that evidence would have been the same in the absence of the presumption."); <u>Jones v.</u> <u>Campbell</u>, 436 F.3d 1285, 1302-03 (11th Cir. 2006) "; <u>Payne v.</u>

LeFevre, 825 F.2d 702, 708 (2d Cir. 1987) (Sandstrom error may be harmless where evidence of intent is overwhelming); Calderon v. Keane, supra, 2002 WL 1205745 at *9 (denying habeas relief notwithstanding clear Sandstrom error where there was strong evidence of intent).

    With respect to the severity of the error, I conclude that although counsel's error was material and satisfies the first prong of Strickland, it was at the low end of the range of material errors because there are several aspects of the charge which mitigate its probable impact on the jury.

    As set forth above, the deficient language to which counsel should have objected came immediately after an extended discussion of the element of intent in which the Trial Court repeatedly advised the jury that it could not convict petitioner unless it found that the prosecution had proven beyond a reasonable doubt that petitioner had intended to cause Powell's death. This extended discussion and repeated emphasis on the prosecution's burden of proof makes it unlikely that the jury would have concluded that the act of stabbing Powell, without more, established an intent to cause his death. See e.g. Nelson v. Scully, 672 F.2d 266, 270, 272 (2d Cir. 1982) (The judges' "emphatic, repeated and detailed" instructions on burden of proof mitigated the effects of the allegedly unconstitutional jury instruction that "there is a principal (sic) of law upon which you may wish

to rely in determining a person's intent, and that is, a person is presumed to intend the natural and probable consequences of his acts.").

Second, although the Trial Court instructed the jury that a "component of . . . intent law is that a person intends the natural and logical consequences of what they do," it followed that instruction with the admonition:  "If that helps use it, if it doesn't help in this context of this case whatever the fact that you are finding, disregard it and look elsewhere in the case to see if there is something else that will assist you" (Tr. 445).  Although the former sentence instructed the jury "that a person intends the natural and logical consequences of what they do," the latter sentence told the jury it was free to disregard this postulate if it did not find it helpful, further mitigating the effect of the erroneous charge.  Admittedly, on a close reading of the charge, there is a tension between Justice McLaughlin's telling the jury that it was obligated to accept the law as he stated it and his unqualified statement that the jury was free to disregard what he described as a "component of the intent law."  Nevertheless, I believe the instruction that the jury could disregard the statement that a person intends the natural and logical consequences of their acts mitigates the effect of the error.  See Mancuso v. Harris, 677 F.2d 206, 210 (2d Cir. 1982) (The qualifying language "unless the act is done

under circumstances or conditions that might preclude the existence of such an intent" mitigated the effects of the burden shifting language in the jury charge); <u>Washington v. Harris</u>, 650 F.2d 447, 453 (2d Cir. 1981); <u>Malik v. Khoenan</u>, 94 Civ. 8084 (LLS), 1996 WL 137478 at *2 (S.D.N.Y. March 26, 1996) (Curative language in the charge that the jury "may reject such presumption or inference . . . . the fact that you may infer such unlawful intent does not shift to the defendant any burden of proof" ameliorated the effects of that portion of the charge that stated "the law says that a person is presumed to intend the particular and probable consequences of his acts").

Finally, had counsel made the appropriate objection, the correct charge -- the jury may infer that a person intends all the natural and probable consequences of an act knowingly done[6] -- while materially different would not have been grossly different. A misstatement of law in a charge is a matter of degree, and some misstatements are more serious than others. I submit that the although the error in the Trial Court's charge was material, it was not so great as to mandate an inference of prejudice.

---

[6]A charge using this precise language was approved in <u>United States v. Russo</u>, 302 F.3d 37, 47 (2d Cir. 2002).

The second factor that must be considered in assessing prejudice is the evidence in the record from which intent could be inferred.

That evidence against petitioner came from the four principal witnesses against petitioner -- Lynn Buksha, Kristine Rivera, Ronald Rodriguez and John Santana.

The prosecution's principal witness against petitioner was Lynn Buksha. Buksha testified that on the afternoon of August 25, 2001, she had been sitting on a bench with Powell at the Wagner Houses in upper Manhattan, watching a baseball game (Tr. 313, 315). Buksha had previously purchased CD's from Powell and was examining the CD's he had available for sale at that time (Tr. 315). Buksha testified that petitioner approached her with a rose and tried to give it to her, but that she told petitioner that she did not want the rose and that she thought it rude for him to interrupt her conversation with Powell (Tr. 316-17, 340, 342). Immediately after Buksha rebuffed petitioner, petitioner stated "[n]obody tells [me] that" to which Buksha replied "[w]ell, I'm telling you that, because I don't want to be bothered, I don't have anything to say" (Tr. 317, 343). Petitioner did not leave and Powell asked petitioner if he [Powell] could talk to petitioner; petitioner responded that there was nothing for them to discuss and walked away (Tr. 317, 343). Buksha

testified that petitioner was angered by Powell's attempt to
intervene between him and Buksha (Tr. 317).

According to Buksha, petitioner returned approximately
twenty minutes later and asked to speak with Powell (Tr. 320-21,
351).  Powell then stood up to speak with petitioner, and the two
walked away from the bench (Tr. 321).  Buksha then described
Powell's actual stabbing as follows:

> [Petitioner] said brother can I speak to you,
> [Powell] got up, walked over.  [Petitioner] had, had
> his hand on [Powell's] shoulder, I think his right hand
> on his shoulder, saying brother can I talk to you and .
> . . he walked over and he said to [Powell], he said to
> [Powell] you know who the 'f' I am, who do you think
> you are and he, I thought they were punches, jabs very
> quickly, three times but when he was three times . . .
> and I ran up to [Powell] telling [petitioner] to stop.

> [Petitioner] turned around, excuse me not [peti-
> tioner, Powell] turned around and looked at me and
> turned purple and he said run Lynn, and I hear people
> outside saying run, run, I couldn't run . . . .

> When I ran and [Powell] turned around and looked
> at me and told me to run, [petitioner] was coming at
> him again towards the back and I remember just remember
> the only time I could move is when I like moved and
> looking directly in front of [petitioner] saying to him
> what are you doing, screaming and he just looked at me
> with this knife, it is not a knife, I don't call it a
> knife, it looked like, it has a handle, I should know
> about kitchen utensils but I don't use anything like
> that, but it is a big, I think like someone is cutting
> in a butcher shop, like a cleaver or something and he
> held it up, looked at me dead in my face, smirked, took
> the thing, lifted his white shirt up, put it down his
> waistband and walked away, walked away towards Wagner
> projects.

(Tr. 321-22).

Rivera testified that she had been walking near the site of the stabbing (Tr. 41) when she saw two African-American males walking together and arguing (Tr. 42-43). Rivera then saw one of the males, later identified as petitioner, stab Powell in the chest with a kitchen knife and then place the knife in a plastic bag and walk away (Tr. 43-45).

Rodriguez testified that on the day of the stabbing he saw petitioner walking with Powell, saw petitioner put his left arm around Powell in a "hugging" motion and then stab Powell (Tr. 64-66).

Santana testified that on the day of the stabbing, he had seen Powell and was walking away from Powell when he heard Powell say "I'm cut" (Tr. 149, 165). Santana then turned toward Powell and saw petitioner walking away very quickly, shaking the blood off a knife (Tr. 149-50).

The testimony of these four witnesses provided compelling evidence of petitioner's intent. The evidence demonstrates that petitioner was angered by the rebuff from Buksha and Powell's attempt to intervene between petitioner and Buksha; he returned for the purpose of confronting Powell concerning the perceived slight. When petitioner confronted Powell, petitioner used coarse language to express his apparent belief that he had been disrespected, and petitioner then stabbed Powell in apparent retaliation. After the stabbing, petitioner smirked at Buksha,

tried to wipe or shake the blood of the knife and calmly walked away with the knife. None of the witness testified that petitioner did any of the things that an individual would ordinarily do after accidentally inflicting a grievous wound on another. Petitioner did not express surprise, did not attempt to help Powell and did not attempt to summon help. Indeed, there was no evidence whatsoever to suggest that the stabbing was the result of an accident or was unintentional in any way. To the contrary, Buksha testified that petitioner smirked at Buksha after the stabbing, suggesting petitioner's satisfaction with the fatal wound inflicted on Powell.

Thus, the totality of the record establishes that there was a material error in the charge but the error was not of great magnitude and was mitigated by other language in the charge. There was also strong evidence of intent, including evidence of a verbal altercation between petitioner and both Powell and Buksha shortly before the stabbing. Based on the totality of the record, I conclude that there is not a reasonable probability that but for counsel's failure to object to the charge, the outcome of the trial would have been different. Petitioner has not, therefore, shown the prejudice necessary to satisfy the second prong of the Strickland test, and his petition should be denied.

## IV.  Conclusion

Accordingly, for the foregoing reasons, I respect-
fully recommend that petitioner's petition for a writ of habeas
corpus be denied.

In addition, since petitioner has not made a substan-
tial showing of the denial of a constitutional right, I also
recommend that a certificate of appealability not be issued.  28
U.S.C. § 2253.  To warrant the issuance of certificate of appeal-
ability, "petitioner must show that reasonable jurists could
debate whether . . . the petition should have been resolved in a
different manner or that the issues presented were adequate to
deserve encouragement to proceed further."  Middleton v. Attor-
neys Gen., 396 F.3d 207, 209 (2d Cir. 2005)(per curiam) (internal
quotation marks omitted); see also Love v. McCray, 413 F.3d 192,
195 (2d Cir. 2005)(per curiam).  For the reasons set forth above,
I conclude that there would be no difference of opinion among
reasonable jurists that the petition should have been reviewed in
a different manner or that petitioner should be encouraged to
proceed further.

## V.  Objections

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of
the Federal Rules of Civil Procedure, the parties shall have ten
(10) days from the date of this Report and Recommendation to file

written objections. See also Fed.R.Civ.P. 6(a) and 6(e). Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Colleen McMahon, United States District Judge, 500 Pearl Street, Room 640, New York, New York 10007, and to the chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge McMahon. FAILURE TO OBJECT WITHIN TEN (10) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. Thomas v. Arn, 474 U.S. 140 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983).


Dated:   New York, New York
         October 20, 2008


                              Respectfully submitted,



                              HENRY PITMAN
                              United States Magistrate Judge


28

Copies mailed to:

Lorca Morello, Esq.
The Legal Aid Society
199 Water Street - 4th Floor
New York, New York, 10038


Martin J. Foncello, Esq.
Assistant District Attorney
New York County
One Hogan Place
New York, New York 10013