UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

TERRY BLIGEN,

        Petitioner,

        -against-                                           06 Civ. 1375 (CM)(HBP)

JOHN BURGE, Superintendent,
Elmira Correctional Facility

        Respondent.

------------------------------------------------------------x

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/22/08
```

### DECISION AND ORDER ADOPTING IN PART THE REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE AND DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS

McMahon, J.:

        Petitioner has filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, asking the court to issue an order vacating his conviction entered on May 18, 2003, by the New York State Supreme Court, New York County (McLaughlin, J.), for one count of murder in the second degree, in violation of New York Penal Law 125.25. Petitioner was found guilty of killing Gilbert Powell by thrusting a knife into his abdomen. Petitioner was sentenced on April 17, 2003, to an indeterminate term of twenty-five years to life and is currently incarcerated pursuant to that judgment.

        Petitioner seeks habeas relief on the ground that he was "denied the effective assistance of counsel by his attorney's failure to object to the court's unconstitutional charge relieving the People of their burden to prove intent, where intent was the central issue in the case"– a so called, "Sandstrom violation." (Pet. Objections at 1). Petitioner argues that the trial court's statement to the jury – "a person intends the natural and logical consequences of what they do" – effectively relieved the State from its burden to prove that petitioner intended to cause death when he stabbed Powell.

        The petition was referred to United States Magistrate Judge Henry Pitman, who has filed a report with a recommendation to the Court that the petition be dismissed. The Court has reviewed the Magistrate's Report, as well as petitioner's and respondent's written objections to the Report. Although the Court agrees with the Report's ultimate conclusion that the petition should be dismissed, the Court disagrees with the Magistrate's finding that the trial court committed a Sandstrom violation in his instructions to the jury. It is on this point that I write. Familiarity with Magistrate Pitman's Report is presumed.

Copies mailed/faxed/handed to counsel on 12/22/08

Sandstrom Error and Defendant's Ineffective Assistance Claim

Whether the challenged language violates Sandstrom must be evaluated in the context of the trial court's entire instruction to the jury on intent. After instructing the jurors on the People's burden to prove each an every element of the crime charged beyond a reasonable doubt, the trial court went on to explained the element of intent:

> Intent means conscious aim, or objective, your purpose. The law says that intent in this case, the theoretical, the claimed intent caused the death. That has to be present at or before the doing of the act.
>
> The law does not any longer have the concept of premeditation. It does not matter that the People have to establish the intent to cause Mr. Powell's death existed for any specific period before Mr. Powell was hit with the knife, struck with the knife. That intent could have been formed in a nanosecond or it could have been formed any other time. There is no time reference with respect to the word intent as there was back in the 1940's crime movies premeditated.
>
> You should understand that even though there is no requirement of time, the People must prove beyond a reasonable doubt that the doing of an act was for the purpose of the intent to cause the death of Mr. Powell.
>
> The mind is a marvelous thing. It can do a whole lot of things simultaneously so that the fact that there is one intent and then there might be more than one intent. If I were to pick up a glass of hot tea on a cold winter morning here and I had a sore throat and I'm giving a charge to a jury, I'm trying to get through the charge, I'm trying to make my throat feel better, maybe the rest of me better. Maybe I'm trying to impress somebody that I can pick up the glass, the cup, without dropping it. All kinds of things can go on simultaneously in the mind. But the law says whatever is going on in the mind, the People have to prove beyond a reasonable doubt that the act done, if you find an act was done, was done for the purpose of killing Mr. Powell.
>
> With regard to intent which always is present in any fair system of law, the law of any fair system does not penalize mere thoughts and they don't penalize unintended actions. In a fair system it has to be a coming together of action, an intent.[1]
>
> Intent is the secret operation of somebody's mind and a fact finder even a juror were they present whenever something happens, be it this case or some other factual situation, never gets a print out of what's going on a person's head and so a fair

---

[1] The context of this passage suggests that there is a mistake in the transcription and that the transcript should read "a coming together of action and intent."

2

system has relied on juries deciding that if the intent component and any other component, I'm specifically talking about mental component, was proven beyond a reasonable doubt.

So the People in this case are suggesting that two principles are useful to you. If you find that either or both of them are not useful based on what your assessment is of the fact, reject them and see whether or not the People have proven, met their obligation in proving the elements beyond a reasonable doubt apart from these two principles.

The two principles are that in gleaning attempting to glean somebody's intent you can look to what a person did before, during, and after the event. On the issue of what they intended during an event if that assists you, that's fine. You are not required to use it. If you don't think its helpful here reject it.

Another component of the intent law is that *a person intends the natural and logical consequences of what they do.* ***If that helps use it, if it doesn't help in this context of his case whatever fact that you are finding, disregard it and look elsewhere in the case to see if there is something else that will assist you.***

(Tr. 442-45) (emphasis added).

Magistrate Judge Pitman concluded that "There can be little question that the challenged language here violated Sandstrom." (R&R at 18). While it would have been preferable had the trial judge not said the phrase "a person intends the natural and logical consequences of what they do," in the overall context of the charge there was no Sandstrom violation.

In Sandstrom v. Montana, 442 U.S. 510 (1979), defendant was charged under Montana law with "deliberate homicide," which requires that the defendant "purposely or knowingly cause the death" of the victim. Id. at 512. At the close of the evidence, the prosecution requested that the trial judge instruct the jury that "the law presumes that a person intends the ordinary consequences of his voluntary acts." Id. at 513. Defense counsel objected stating that "'the instruction ha[d] the effect of shifting the burden of proof on the issue of' purpose or knowledge" on to the defendant. Id. Overruling defense counsel's objection, the court instructed the jury in accordance with the prosecutor's request. Id. After the jury returned a guilty verdict, the defendant raised this issue on appeal. Affirming the judgment of the trial court, the Supreme Court of Montana declined to find a constitutional violation in this instruction. Id. However, the United States Supreme Court held that the instruction violated the defendant's due process rights. The Court stated that the "jury may have interpreted the judge's instruction as constituting either a burden-shifting presumption . . . or a conclusive presumption . . . ." Id. at 524. The relevant question for a court reviewing a jury instruction claimed in violation of the Sandstrom principle is whether a reasonable juror, considering the potentially offending words in the context of the whole charge, would have understood the charge to be either mandatory or permissive. Id at 519, 523.

3

When the challenged language in the present case is read in the context of the whole charge, it is clear to this Court, that the instruction created nothing more than a permissive inference. After setting forth the statutory definition of intent, the trial court tells the jury that "the People in this case are suggesting that two principles are useful to you." Prior to telling the jurors what those two principles are, the judges instructs the jury that neither principle is binding: "If you find that either or both of them are not useful based on what your assessment is of the fact, reject them."

The trial court then went on to explain that the first of these two principles was that the jurors "can look to what a person did before, during and after an event" in evaluating "the issue of what they intended during an event." The judge stressed that this was simply an option: "if that assists you, that's fine. You are not required to use it. If you don't think it's helpful here reject it."

The judge then turned to the second principle: "Another component of the intent law is that a person intends the natural and logical consequences of what they do." Far from leaving the jurors with the impression that this principle was a mandatory, the judge immediately went on to stress its permissive nature: "If that helps use it, if it doesn't help in this context of his case whatever fact that you are finding, disregard it and look elsewhere in the case to see if there is something else that will assist you." Unlike the trial judge in Sandstrom, the judge in Bligen's case did not say that the law created a "presumption" in this regard.

No reasonable juror could have thought that the two principles created a mandatory presumption directing that juror to presume intent to kill if he or she found that petitioner had in fact stabbed Powell. The jurors were told that they were absolutely free to reject the notion that "a person intends the natural and logical consequences of what they do." The judge repeatedly stressed that the jurors "had a choice," in that they could elect to use or reject the "suggested" principles.

Petitioner argues that the jurors would not have interpreted the court's words as an invitation to reject the principles. Petitioner suggests that the court's instruction that the jurors must follow the law as given to them by the court, would have prevented the jurors from rejecting the suggested principles. This argument makes no sense. The court's general admonition to the jurors that they must follow the law as charged by the court would have only re-enforced the court's specific instruction to the jurors that they were free to employ or reject the (non-legal) principle that "a person intends the natural and logical consequences of what they do."

The balance of the trial court's charge on intent makes abundantly clear that the Government bore the burden to prove beyond a reasonable doubt that an act was done (the stabbing) and that the act was done for the purpose of killing Mr. Powell. (See Tr. at 442-45).

Since the challenged language did not offend Sandstrom when viewed in the context of the entire charge, there was no basis for defense counsel to object and so no basis for petitioner's ineffective assistance claim.

Even assuming that there was Sandstrom error here, as Magistrate Judge Pitman concluded,

4

petitioner's ineffective assistance of counsel claim would nonetheless be dismissed because petitioner has not demonstrated that he suffered any prejudice as a result of his counsel's failure to object. See Strickland v. Washington, 466 U.S. 668, 686-87 (1984). On this point, I adopt Magistrate Judge Pitman's Report and Recommendation.

The petition for a writ of habeas corpus is denied.

Since petitioner has not made a substantial showing of the denial of a constitutional right, no certificate of appealability shall issue. 28 U.S.C. § 2253. To warrant the issuance of a certificate of appealability, petitioner must show that reasonable jurist could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. Middleton v. Attorneys Gen., 396 F.3d 207, 209 (2d Cir. 2005) (per curiam). While there is a difference of opinion between the Magistrate and me as to whether the trial court committed a Sandstrom violation, both of us agree that petitioner has not shown prejudice even if there were error, as required for him to prevail on an ineffective assistance claim. Therefore, I conclude that there would be no difference of opinion among reasonable jurist that the petition should have been reviewed in a different manner, or that petitioner should be encouraged to proceed further.

This constitutes the decision and order of the Court.

December 21, 2008

U.S.D.J.

BY ECF TO ALL COUNSEL

5